HIBERNIA COMMUNITY DE-
VELOPMENT CORPORA-
TION, INC., et al

v.

U.S.E. COMMUNITY SERVICES
GROUP, INC. et al

No. Civ.A. 01–346.

United States District Court,
E.D. Louisiana.

April 13, 2001.

512

Corinne Ann Morrison, James Calvin Young, Earl F. Sundmaker, III, Chaffe, McCall, Phillips, Toler & Sarpy, LLP, New Orleans, LA, for plaintiffs.

Edmond Christian Haase, III, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, LA, for U.S.E. Community Services Group, Inc., David Marquette, defendants.

Richard G. Duplantier, Jr., John L. Fontenot, Jr., Galloway, Johnson, Tompkins, Burr & Smith, New Orleans, LA, Edmond Christian Haase, III, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, LA, Todd Robert Slack, Gainsburgh, Benjamin, David, Meunier & Warshauer, New Orleans, LA, for Columbia Cas. Co., defendant.

Edmond G. Miranne, Jr., City Attorney's Office, New Orleans, LA, for Vincent T. Sylvain, Wayne E. Clark, Winston H. Reid, Anthony Faciane, defendants.

### ORDER AND REASONS

CLEMENT, District Judge.

Before the Court is plaintiffs' Motion to Remand. For the following reasons, plaintiffs' motion is DENIED.

### A. BACKGROUND

In September 1998, plaintiffs Hibernia Community Development Corporation, Inc. ("HCDC") and Hibernia National Bank ("Hibernia") contracted with defendant U.S.E. Community Services Group, Inc. ("U.S.E.") to administer Project Renaissance, a program to assist low income, elderly, and handicapped residents in repairing and remodeling their homes. Under the agreement, Hibernia would loan qualified applicants up to $20,000.00 for home repairs. Qualified homeowners were also eligible for up to $25,000.00 in grant money from the Federal Government through the HOME Program. Hibernia agreed to advance the grant money, which would be repaid by the City of New Orleans with HOME Program funds. Instead of going directly to the homeowners, all funds provided by Hibernia would be turned over to U.S.E. for deposit in an escrow account; and U.S.E. would disburse the funds to qualified contractors, in accordance with the HOME Program guidelines.

Project Renaissance ran into trouble when defendant David Marquette ("Marquette"), the manager of U.S.E.'s New Orleans office, allegedly began releasing Hibernia's money to contractors who had not complied with the HOME Program guidelines. Because Marquette allegedly improperly disbursed these funds, the City of New Orleans will not reimburse Hibernia for the grant money it advanced to U.S.E.

On December 6, 2000, Hibernia and HCDC filed suit in Louisiana state court against U.S.E., Marquette, and Columbia Casualty Company ("Columbia"). Defendant Columbia was served through its statutory agent, the Louisiana Secretary of State, on January 3, 2001. The Secretary of State forwarded the petition to Columbia, which received it on January 9, 2001. On February 7, 2001, the defendants removed the case to this Court.

The plaintiffs now move to remand the case on the grounds that it was untimely removed and that, even if it were timely removed, the Court does not have jurisdiction because Marquette is a non-diverse defendant. The defendants contend that they timely removed the case and that Marquette has been fraudulently joined as a defendant.

### B. TIMELINESS OF REMOVAL

■ The plaintiffs first argue that the defendants failed to file their notice of

removal within thirty days from the date on which the first defendant was served. *See Getty Oil Corp. v. Ins. Co. of North Am.*, 841 F.2d 1254, 1263 (5th Cir.1988). The plaintiffs contend that service on the Louisiana Secretary of State on January 3, 2001 qualifies as receipt by defendant Columbia; and therefore, the defendants should have filed their notice of removal by February 2, 2001. The defendants assert that the thirty-day period did not begin to run until Columbia actually received the petition from the Secretary of State on January 9, 2001, and that their notice of removal filed on February 7, 2001 was timely.

■ In support of their motion, the plaintiffs rely on *Bodden v. Union Oil Co. of Cal. and Life Ins. Co. of North Am.*, 82 F.Supp.2d 584 (E.D.La.1998)(Lemmon, J.). The *Bodden* court held that "service is completed when made on the Secretary of State regardless of when, or even whether, the Secretary subsequently performs the ministerial task of forwarding notice to the defendant." *Id.* at 588. However, contrary to *Bodden*, the general rule is that the thirty-day clock does not begin to run when a statutory agent such as the Secretary of State is served:

> Realistically speaking, of course, these kinds of statutory agents are not true agents but are merely a medium for transmitting the relevant papers. Accordingly, it now appears to be settled law that the time for seeking removal begins to run only when the defendant or someone who is serving as the defendant's agent in fact receives the process.

14c CHARLES ALAN WRIGHT, ARTHUR R. MILLER & EDWARD H. COOPER, FEDERAL PRACTICE AND PROCEDURE: JURISDICTION 3D § 3732 (3d ed.1998). *See, also, Manuel v. Unum Life Ins. Co. of Am.*, 932 F.Supp. 784 (W.D.La.1996)(holding that the "thirty day period in which defendant can remove

commences on defendant's actual receipt of a copy of the pleading"); *Baum v. Avado Brands, Inc.*, 1999 WL 1034757, \*2 (N.D.Tex. Nov 12, 1999)(holding that *Bodden* goes against the great weight of authority); *Fidelity Funding, Inc. v. Pollution Research and Control Corp.*, 1999 WL 20955, \*2 (N.D.Tex. Jan 7, 1999).

In addition, the *Bodden* court based its conclusion on the Fifth Circuit's opinion in *Reece v. Wal–Mart Stores, Inc.*, 98 F.3d 839, 841 (5th Cir.1996), which was abrogated by the Supreme Court in *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 355–56, 119 S.Ct. 1322, 143 L.Ed.2d 448 (1999). In interpreting the removal procedures set out in 28 U.S.C. § 1446(b), the *Reece* court adopted the "receipt rule." *Reece*, 98 F.3d at 841–42. In *Murphy Bros.*, the Supreme Court overturned the receipt rule because it opened up the possibility that a person's "procedural rights [might] slip away before service of a summons, *i.e.*, before one is subject to any court's authority." *Murphy Bros.*, 526 U.S. at 356, 119 S.Ct. 1322.

Because *Bodden* was based on *Reece* and because it is contrary to the general rule, the Court declines to adopt the *Bodden* holding and finds that the thirty-day period did not begin to run until Columbia actually received the plaintiffs' petition. Accordingly, the Court finds that the defendants' removal was timely.

### C. FRAUDULENT JOINDER OF MARQUETTE

Even if the case were timely removed, the plaintiffs argue that the Court has no jurisdiction because defendant Marquette is a non-diverse party. The defendants argue that Marquette was fraudulently joined. Plaintiffs allege two causes of action against Marquette. First, they claim that he tortiously interfered with the contract between U.S.E. and HCDC/Hibernia.

Second, they argue that he committed negligent acts that breached an obligation to perform certain tasks under U.S.E.'s contract with the plaintiffs.

### 1. Tortious Interference with Contractual Relations

■ The defendants submit that the plaintiffs cannot assert a cause of action against Marquette for tortious interference because he is not an officer of U.S.E. In *9 to 5 Fashions, Inc. v. Spurney*, 538 So.2d 228, 234 (La.1989), the Louisiana Supreme Court established a narrow cause of action for tortious interference with a contract, recognizing "only a corporate officer's duty to refrain from intentional and unjustified interference with the contractual relation between his employer and a third person."

Citing *Cowen v. Steiner*, 689 So.2d 516, (La.App. 3 Cir.1997), *rev'd*, 701 So.2d 140 (La.1997), the plaintiffs claim that a defendant need not be an officer to be liable for tortious interference. In *Cowen* the Louisiana Third Circuit held that the defendant could be sued for tortious interference with a contract because, although he was not an officer of his corporation, he functioned as an officer. However, *Cowen* was summarily reversed by the Louisiana Supreme Court, which reinstated the trial court's dismissal of the case on the grounds that the defendant was not an officer of the corporation.

The Court does not find that Louisiana law permits a cause of action for tortious interference with a contract against anyone other than an officer of a corporation. In *Great Southwest Fire Ins. Co. v. CNA Ins. Companies*, 557 So.2d 966, 969 (La.

1990), the Louisiana Supreme Court reaffirmed its intention to limit the availability of a cause of action for tortious interference. *See, id.* (stating that the Louisiana Supreme Court "recently recognized for the first time in some 87 years the possibility of a narrowly drawn action for intentional interference with contractual rights and indicated that it would proceed with caution in expanding that cause of action"). In addition, several other federal courts in Louisiana have considered this issue and declined to expand liability for tortious interference with a contract beyond a corporate officer.[1]

> In fulfilling its *Erie* role, this Court
>
> can only predict Louisiana state law; it is up to the Supreme Court of Louisiana and not this court to change the substantive law of that state. It took the Louisiana Supreme Court almost 90 years to recognize a quite narrow cause of action for tortious contractual interference; it is not for this diversity court to expand that cause of action in the face of Louisiana's expressed unwillingness to do so.

*Am. Waste & Pollution Control Co. v. Browning–Ferris, Inc.*, 949 F.2d 1384, 1391 (5th Cir.1991)(internal citations omitted). Accordingly, in light of the Louisiana Supreme Court's reversal of *Cowan*, this Court is unable to expand the availability of a cause of action for tortious interference with a contract; and the Court finds that the plaintiffs have failed to state a cause of action against Marquette.

---

**1.** *See, e.g., Medx, Inc. of Florida v. Ranger*, 1993 WL 21250, *3 (E.D.La. Jan 25, 1993)(Mentz, J.)(granting summary judgment in favor of defendant in tortious interference with contract suit because the defendant was not an officer); *Endotech USA v. Biocompatibles Intern. PLC*, 2000 WL 1594086, *13 (E.D.La. Oct 24, 2000)(Duval, J.)(stating that tortious interference with business relations, "unlike the contractual interference cause of action, is not restricted to officers of corporations"); *Commercial Capital Holding Corp. v. Team Ace Joint Venture*, 2000 WL 959709 (E.D.La. Jul 11, 2000)(Porteous, J.).

### 2. Breach of Contract

■ The plaintiffs also allege that Marquette negligently performed U.S.E.'s obligations by releasing Hibernia's money to contractors who did not complete their projects, whose repairs did not meet the HOME Program guidelines, and who did not furnish invoices and documents for their work. The plaintiffs further claim that Marquette personally obligated himself to perform certain duties that he enumerated in his September 2, 1998 letter to Hibernia and that he negligently performed these duties.

■ As to the first theory, the Court does not find that the plaintiffs have stated a claim under Louisiana law. Plaintiffs cite *Canter v. Koehring Co.*, 283 So.2d 716, 721–22 (La.1973), for the contention that they have properly asserted a claim in negligence against Marquette. However, *Canter* "applies only to bodily injury claims and does not apply to claims arising in a commercial setting." *Unimobil 84, Inc. v. Spurney*, 797 F.2d 214, 217 (5th Cir.1986). In a commercial setting, "third party creditors do not have a cause of action against corporate officers or directors for negligence, mismanagement, breach of fiduciary duty, or for debts of the corporation ... Specifically: Officers, employees, and agents owe no duties to third parties for their negligent acts and omissions in a commercial context." *Grimaldi Constr., Inc. v. Robinson*, 1997 WL 191494, at *3 (E.D.La. Apr 18, 1997)(Schwartz, J.) (citations omitted).

In the case at bar, the plaintiffs are attempting to bring a cause of action against Marquette for negligent acts allegedly committed in the performance of his employer's obligations. In their memorandum, the plaintiffs state that U.S.E. "certainly owed a duty to HCDC and Hibernia based upon the Agreements with them," that "U.S.E. delegated to Marquette the responsibility of performing U.S.E.'s obligations including authorizing payment of Hibernia's money from the escrow accounts," and that "Marquette was personally negligent when he wrongfully spent Hibernia's money." Plaintiff's Mem. at 10. The Court finds that the plaintiffs are clearly attempting to recover for Marquette's negligence in a commercial context; and as the *Grimaldi* court stated, Louisiana law does not provide such a cause of action. Accordingly, the Court finds that no cause of action exists against Marquette for negligently performing the contractual obligations of U.S.E.

■ Finally, the plaintiffs argue that Marquette personally obligated himself to perform certain duties that he enumerated in a letter to Hibernia dated September 2, 1998, and that he negligently performed those duties. However, Marquette, wrote this letter on U.S.E. letterhead detailing procedures he would perform as a U.S.E. employee. The plaintiffs do not explain how Marquette assumed personal liability through this letter. In fact, the plaintiffs cite *Canter* in support of this theory as well, and the Court has already determined that *Canter* is inapplicable to the case at bar.

For the reasons stated above, the Court does not find that the plaintiffs have pled a cause of action against Marquette. Accordingly, the Court finds that Marquette has not been properly joined in the instant suit, and he is dismissed as a defendant.

### D. CONCLUSION

IT IS ORDERED that, because the plaintiffs have not stated a cause of action against defendant David Marquette, Marquette is DISMISSED as a defendant.

IT IS FURTHER ORDERED that, because the instant case has been timely removed and because the defendants have

established diversity jurisdiction, the plaintiffs' Motion to Remand is DENIED.